# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

| | |
|---|---|
| LESHARAE WILKINS, | No. EDCV 09-317 AGR |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Lesharae Wilkins ("Wilkins") filed a Complaint on February 18, 2009. Pursuant to 28 U.S.C. § 636(c), the parties filed consents to proceed before Magistrate Judge Rosenberg on March 6 and 27, 2009. (Dkt. Nos. 8-9.) The parties filed a Joint Stipulation ("JS") on September 11, 2009, that addresses the disputed issues in the case. The Commissioner filed the certified administrative record ("AR"). The Court took the matter under submission without oral argument.

Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///
///
///

# I.

## PROCEDURAL BACKGROUND

On September 14, 2005, Wilkins filed an application for disability insurance benefits and supplemental security income benefits, alleging disability since May 1, 2005. A.R. 12. The applications were denied initially and on reconsideration. AR 45-50. On April 30, 2008, an Administrative Law Judge ("ALJ") conducted a hearing, at which Wilkins testified. AR 31-44. On August 20, 2008, the ALJ issued a decision denying benefits. AR 9-22. Wilkins requested review. AR 5. On January 14, 2009, the Appeals Council denied Wilkins' request for review. AR 2-4. This lawsuit followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

///
///
///

## III.

## EVALUATION OF DISABILITY

### A. Disability

A person qualifies as disabled and is eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. The ALJ's Findings

The ALJ found Wilkins has the following severe impairments: "bipolar disorder, cocaine abuse dependence, marijuana abuse disorder, amphetamine abuse disorder and alcohol dependence disorder." AR 20. Her "polysubstance use disorder and alcohol dependence disorder meets the criteria of Listing 12.09 of the listed impairments in Appendix 1, Subpart P, Regulation No. 4." AR 21. She "is disabled when her polysubstance use disorder and alcohol abuse disorder are considered." *Id.*

However, "[w]hen [Wilkins's] polysubstance use disorder and alcohol abuse disorder are not considered, [she] does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, [she] does not have a severe impairment or combination of impairments [ ]." *Id.* Her "polysubstance use disorder and alcohol dependence disorder are contributing factors material to the determination of disability." *Id.* Therefore, she "was not under a 'disability' as defined in the Social Security Act, at any time through the date of the decision." *Id.*

### C. Treating Physician

Wilkins argues that the ALJ improperly rejected Dr. Khin's opinion as to her inability to work.

3

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and quotations omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart,* 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

On December 13, 2006, Dr. Khin signed a Mental Disorder Questionnaire Form. AR 402-405. The report indicates that Wilkins had been seen as a patient from September 28, 2005 through December 6, 2006.[1] AR 405. Dr. Khin diagnosed bipolar I mixed type with psychotic features and polysubstance dependence in partial remission. AR 404. Dr. Khin opined that Wilkins has "an inability to focus and retain information," and "has a history of periodic substance abuse as a way to self-medicate her mental health problems and/or to survive on the streets." AR 402. She "is extremely emotionally labile seeming pleasant one minute but paranoid and fearful the next." *Id*. She "appears to be of average intellectual functioning but no formal tests have been administered." AR 403. "Her memory is fair, her concentration poor, her perceptions and thinking processes appear disturb[ed] by hallucinations, paranoid ideation and a belief that she has been reincarnated for an unknown purpose." *Id.* "[She] can be very manipulative and fails to comprehend the consequences of her actions even when explained to her . . . [she] persistently blames others for her behaviors." *Id.* Dr. Khin

---

[1] Dr. Khin wrote treatment records on September 28, 2005 (AR 165-167, 169), October 25, 2006 (AR 160, 162-164), November 8, 2006 (AR 159), December 6, 2006 (AR 158), January 3, 2007 (AR 155) and February 7, 2007 (AR 156-157).

opined that Wilkins' "symptoms have persisted in spite of a period of sobriety and are there[fore] unlikely to be purely substance induced." AR 403.

The ALJ rejected Dr. Khin's opinion for three reasons: (1) Wilkins "was actively using drugs and alcohol during this time period"; (2) Dr. Khin does not address Wilkins' polysubstance abuse disorder in his statement; and (3) his opinion as to her ability to work is conclusory and does not assess the degree of her functional limitations. AR 19.

Dr. Khin does not identify a specific "period of sobriety" in his opinion.[2] The ALJ found that "[t]he treatment records show no significant period of sobriety" (AR 13) and that Wilkins was actively using drugs and alcohol through that time period. AR 19. The ALJ described Wilkins' medical records detailing use of amphetamines and alcohol during the period June 2004 until Dr. Khin's first psychiatric treatment. AR 14-15. On September 28, 2005, Dr. Khin diagnosed psychotic disorder NOS and polysubstance dependence. AR 166. As the ALJ noted, Dr. Khin recommended that Wilkins continue in a drug alcohol program. AR 15, 166. Subsequently, on October 31, 2005, Wilkins was admitted to a hospital on a 5150 hold. AR 263. She tested positive for amphetamines and THC. AR 265, 268. She reported using methamphetamines three to four times per week and getting drunk daily. AR 262. On November 6, 2005, Wilkins again went to the hospital emergency room and tested positive for amphetamines. AR 254, 257-258. She reported using methamphetamines three to four times weekly. AR 249. On November 23, 2005, Wilkins was brought to a hospital on a 5150 hold. AR 243. She reported using methamphetamine on November 23 and the previous two days. AR 238, 401; AR 236 (current substance abuse meth & alcohol). She tested positive for methamphetamine. AR 241, 243. While in jail in December 2005, Wilkins reported daily methamphetamine use. AR 282, 295. The ALJ notes that Wilkins was

---

[2] Dr. Khin's records indicate he did not order lab tests for Wilkins at any time during his treatment.

5

incarcerated through July 2006, and there are no medical records from December 2005 until October 2006. AR 15.

On October 4, 2006, Wilkins was brought to a hospital on a 5150 hold. She was diagnosed with bipolar disorder, manic with psychotic features, amphetamine abuse, and alcohol abuse. AR 227. Wilkins admitted she had a methamphetamine and alcohol problem, and was accepted into the Cedar House program on October 11, 2006. AR 228. On October 25, 2006, Dr. Khin saw Wilkins, and she admitted using methamphetamine "recently." AR 162. Dr. Khin diagnosed bipolar disorder type 1 mixed type with psychotic features, and polysubstance dependence. AR 163. Wilkins felt the same on November 8, 2006, and better on December 6, 2006. AR 158-159. The record contains substantial evidence supporting the ALJ's finding that Wilkins was actively using amphetamines and/or alcohol during this time period.

The ALJ further found that Dr. Khin did not address Wilkins' polysubstance abuse disorder in his December 13, 2006 opinion. AR 19. Wilkins argues Dr. Khin opined that her "symptoms have persisted in spite of a period of sobriety and are there[fore] unlikely to be purely substance induced." AR 403; JS 6. The ALJ rejected the existence of a significant period of sobriety. Moreover, as discussed more fully below in connection with Wilkins' third issue, the issue is not whether polysubstance abuse is the sole and exclusive cause of her symptoms. The question is whether alcohol or drug abuse is "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). A key inquiry is whether Wilkins' mental limitations that formed the basis of the ALJ's disability finding would remain if she stopped using drugs and alcohol. 20 C.F.R. §§ 404.1535, 416.935. Dr. Khin's opinion does not address that question. The ALJ found Wilkins disabled when her polysubstance abuse and alcohol abuse are considered. For example, Dr. Khin's quotations in the section entitled "Present Illness" and "Reality Contact" appear to be taken from October 19, 2006 notes of a clinical therapist, who also wrote "no audio hallucinations except when on drugs." *Compare* AR 177 *with* AR 402, 403. Dr. Khin's response to "Past History of

Mental Disorder" does not mention drug use in connection with Wilkins' previous psychiatric hospitalizations. *Compare* AR 402 *with* AR 504 (6/9/04 positive test for amphetamines, cannabinoids, methamphetamine), 154 (8/20/04 diagnosis of amphetamine and alcohol dependence), 572 (8/7/05 brought to ER by sheriff deputy; took speed; clinical impression of drug abuse, amphetamine use), 436-437, 477, 479, 481 (8/8-12/05 discharge diagnosis of psychosis NOS, amphetamine abuse), 439, 458, 461, 466-467, 471 (8/25, 27, 30/05 positive test for amphetamines and THC); *see supra* at 5-6.

     The ALJ cited Dr. Khin's opinion that Wilkins "is not capable of functioning in a work environment at all, she has never held a job for more than a few weeks but she harbors the belief that she is capable of being a law enforcement officer."[3]  AR 404. The ALJ rejected this opinion because it is conclusory and Dr. Khin did not assess "the degree of the claimant's functional limitations." AR 19. Certainly, the ALJ cited Dr. Khin's opinion in support of her finding that Wilkins is disabled when her polysubstance abuse and alcohol abuse are considered. The ALJ found that Wilkins has marked limitations in concentration, persistence or pace, moderate restrictions in her activities of daily living, and mild restrictions in her social functioning. AR 17 (citing AR 403-04). The ALJ also found multiple instances of drug induced psychosis. AR 17. However, Dr. Khin does not address Wilkins' *degree* of functional limitation if she were to stop using drugs and alcohol. Dr. Khin states only that "even with medication compliance she is unlikely to rise above her current level of functioning." AR 405.

     The ALJ's reasons for discounting Dr. Khin's opinion were specific and legitimate, and based on substantial evidence.

---

   [3] Dr. Khin further opined that Wilkins "is not a suitable candidate for employment and will probably need some form of assisted living environment." AR 405.

7

**D.     Side Effects**

Wilkins points to two undated questionnaires, including a Disability Report - Adult and a Disability Report - Appeal, in which she identified the following side effects: "hallucinations," "weight gain" and "makes me sleepy." AR 87, 136. She associates those side effects with Geodon, Lamictal and Risperidone, respectively.[4] *Id.* Wilkins argues the ALJ did not specifically address these side effects in his decision. She does not cite to any evidence that these side effects interfere with her ability to work.

At the hearing, the ALJ explicitly asked Wilkins, "Do you have any side effects from the medicines you take?" AR 41. Wilkins responded, "I don't think so. I don't get dizzy or anything." *Id.* The treatment records do not contain any complaint by Wilkins as to side effects from medications. "There were passing mentions of the side effects of [plaintiff's] medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with [his] ability to work." *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001); *see also Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) ("[Plaintiff] produced no clinical evidence showing that narcotics use impaired his ability to work"). The ALJ did not err.

**E.     Polysubstance Abuse and Alcohol Abuse As Contributing Factors Material to Disability**

"An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). "[T]he key factor we will examine in determining whether drug addition or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535,

---

[4] However, she also stated that she is taking Seroquel *because* she is having hallucinations. AR 87. She offers nothing to reconcile that she is taking that medication to combat hallucinations - without reported side effects - yet contends that another medication is causing her hallucinations.

8

416.935. The Commissioner evaluates which of the claimant's physical and mental limitations that formed the basis of the disability finding would remain if the claimant stopped using drugs and alcohol. *Id.* If the remaining limitations are disabling, the claimant is deemed disabled independent of the drug addiction or alcoholism. If, however, the remaining limitations would not be disabling, then the drug addiction or alcoholism is a contributing factor material to disability. *Id.*

"[T]he claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007) (emphasis omitted). Wilkins bears the burden of proving that the disabling effects of polysubstance abuse and alcohol abuse would remained if she stopped using drugs and alcohol. *Id.* at 748.

The ALJ concluded that Wilkins' "polysubstance use disorder and alcohol dependence disorder are contributing factors material to the determination of disability." AR 21. When Wilkins' "polysubstance abuse disorder and alcohol abuse disorder are not considered, [Wilkins] does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, [Wilkins] does not have a severe impairment or combination of impairments." *Id.* Wilkins' psychosis is secondary to her use of drugs and alcohol. AR 19.

The ALJ concluded that, absent polysubstance abuse and alcohol abuse, Wilkins' "bipolar disorder causes mild limitations in her activities of daily living, social functioning and concentration, persistence or pace." *Id.*

Wilkins argues that Dr. Khin opined that her symptoms "appear to be lifelong." AR 403; JS 14. However, Dr. Khin's statement is based on Wilkins' subjective statements as to her history. The ALJ found that Wilkins' "allegations regarding her functional limitations absent her drug use and their impact on her ability to work are not totally credible." AR 21; *see also* AR 13, 15, 18. Wilkins does not challenge that finding.

9

1	The ALJ cited Wilkins' mental health evaluation while incarcerated on July 17,
2	2003.[5] *Id.* The screening form dated June 26, 2003, has an inmate's signature and
3	indicates Wilkins was not using street drugs.  AR 390.  The mental health evaluation
4	three weeks later states that Wilkins had "good affect, clear thinking, coherent, Ox4,
5	and good memory."  AR 396.  Wilkins denied auditory or visual hallucinations, and
6	reported fair sleep and increased appetite.  *Id.*  Wilkins exhibited "no current evidence of
7	functional impairment due to mental illness."  *Id.*  Wilkins was given a Global
8	Assessment of Functioning score of greater than 60, defined on the form as "mild or
9	less."  *Id.*  Her diagnosis was type 2, defined as "less serious."  No treatment was
10	recommended, with re-screening only upon request.  *Id.*  The remainder of her medical
11	records at the jail are unremarkable.

12	The ALJ found no evidence of psychiatric hospitalizations or other episodes of
13	deterioration or decomensation in work or work-like settings without the use of drugs.
14	AR 19.  This finding is supported by substantial evidence.  The hospitalizations during
15	the period June 2004-October 2006 are described above and will not be repeated here.
16	Wilkins argues that one psychiatric record at Arrowhead Regional Medical Center
17	("ARMC") dated October 4, 2006 states that Wilkins "was evaluated first at Victor[]
18	Valley Hospital.  Urine drug screen there was negative."  AR 410; JS 14-15.  However,
19	Victor Valley Hospital stated on December 28, 2006 that Wilkins had never been treated
20	at its facility.  AR 413.  The record does not contain any drug test results for Wilkins
21	during the period October 1-11, 2006, when she was discharged from ARMC.  As noted
22	above, Wilkins admitted she had "amphetamines problem and alcohol problem," and
23	was accepted into the Cedar House program upon discharge on October 11, 2006.  AR
24	228.  It is for the ALJ to resolve conflicts in the medical record.  *Thomas v. Barnhart,*
25	278 F.3d 947, 956-57 (9th Cir. 2002).

---

[5] The ALJ indicates the date is July 24, 2003.  AR 19.  However, the July 24 date is shown as Wilkins' next court date.  AR 396.  The date of evaluation is July 17, 2003.  *Id.*

1        The medical records in 2007-2008 show additional hospitalizations with attendant drug use. On October 5, 2007, Wilkins was brought to a hospital by a deputy sheriff. AR 663. She reported using speed. AR 667. On November 18, 2007, Wilkins was admitted to the hospital on a 5150 hold. AR 651. She tested positive for cocaine. AR 652. Upon discharge on November 21, 2007, she reported feeling well with no hallucinations and decided to quit street drugs. *Id.* However, on November 27, 2007, Wilkins was admitted to the hospital on a 5150 hold and tested positive for cocaine. AR 612, 636, 641. On December 14, 2007, Wilkins was admitted to the hospital. AR 633. She was kicked out of a rehab program for drug abuse and reported using amphetamines, cocaine and alcohol. AR 618. She tested positive for amphetamines and cocaine. AR 626. Upon discharge from the hospital on December 18, 2007, she denied auditory or visual hallucination, or paranoid delusion. AR 633. On December 25, 2007, Wilkins was admitted to the hospital and was 20 weeks pregnant. AR 606, 609. She admitted using drugs and alcohol, and tested positive for cocaine and THC. AR 604, 608, 613-614. As summarized by the hospital, "[t]he patient has a long history of substance abuse, mood swings, medication noncompliance, failure of several rehabs and is essentially homeless." AR 609. She was discharged to the New House rehab program. AR 610.

        The ALJ also relied upon an examining physician's opinion. AR 19. On January 4, 2007, Wilkins was seen by Dr. Abejuela. AR 193-199. Wilkins denied use of street drugs or alcohol "at present." AR 195. Dr. Abejuela saw no evidence of intoxication and noted no unusual behavior. AR 193, 195. Wilkins was logical and coherent, and able to describe her history of paranoid delusions and hallucinations. AR 193-194, 196. Her cognitive functioning was normal. She was able to do serial 3s and 7s, and recall three out of three items after three and five minutes. AR 196. She was able to perform simple math problems. *Id.* Dr. Abejuela assessed mild impairment in concentration, persistence, and pace, and mild difficulties in maintaining social functioning. AR 198. Dr. Abejuela found no repeated episodes of emotional deterioration in work situations.

*Id.* Wilkins' ability to understand, carry out, and remember simple instructions is not impaired, and her ability to understand, carry out, and remember complex instructions is mildly impaired. Wilkins' response to co-workers, supervisors and the public is mildly impaired. Her ability to respond appropriately to usual work situations is mildly impaired, and her ability to deal with changes in a routine work situation is mildly impaired (although does not preclude function).[6] AR 198. Dr. Abejuela expected that her psychiatric symptoms would continue to abate on medication and "as long as she continues to abstain from methamphetamines." AR 199. An examining physician's opinion based on independent clinical findings constitutes substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Like Dr. Abejuela, the non-examining physician, Dr. Dudley, found mild limitations in activities of daily living, social functioning, and concentration, persistence or pace. AR 149. Dr. Dudley opined that "[w]ithout illicit use, claimant's mental impairment is non-severe." AR 151.

      The ALJ concluded that Wilkins' bipolar disorder, in the absence of polysubstance abuse or alcohol abuse, was not severe. AR 19. Wilkins challenges this finding (JS 14), and states that her mental impairments in the absence of polysubstance and alcohol abuse had "'more than a minimal effect'" on her ability to work. JS 15.

      When, as here, in the absence of polysubstance and alcohol abuse an ALJ rates the degree of limitation as mild in the first three functional areas (activities of daily living, social functioning, and concentration, persistence, or pace) and finds no episodes of decompensation, "we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1); *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005). Wilkins relies on the opinion of

---

   [6] Dr. Khin opined that: "If supervised, patient can follow directions, complete basic household chores and maintain her personal hygiene." AR 404. Wilkins "appears to be able to follow written directions and can write at a High School level." *Id.*

Dr. Khin, but the ALJ had specific and legitimate reasons based on substantial evidence for rejecting Dr. Khin's opinion.

### F. Lay Witness Statement

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *see Valentine v. Comm'r, SSA*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ rejected the lay witness statement because it "fails to mention the claimant's long history of drug and alcohol use and her noncompliance with mental health treatment." AR 20. Wilkins argues that there is no evidence that the lay witness was untruthful or deceitful. The ALJ made no finding as to untruthfulness or deceit. Instead, the ALJ found the statement unreliable as to the claimant's limitations in the absence of drug and alcohol abuse. The ALJ did not err.

## IV.
## CONCLUSION

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 6, 2010

ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE